Good morning, Your Honors. May it please the Court. I'm Marcus Borosov, Federal Defenders, here for Coleman Payne. The government concedes error in some places in this case and asks the Court to more narrowly construe some conditions than I think their language allows. In other places we disagree fundamentally about what the District Court said or meant. All of that militates in favor of remand for resentencing in this case. But I'll begin my comments with the no-contact condition, where Mr. Payne seeks to have unsupervised contact with his younger family members, and the District Court failed to individually examine the burden on those relationships against his familial liberty interest in those relationships. Counsel, let's just say that we concede that there's a liberty interest in this. So far as I know, we don't have a case that goes this far to, I think, a nephew, niece. We've got Wolfchild. We've got State v. Trump. Talk about the need for an individualized review. But in this case, if I understand correctly, by the time your client leaves prison, there will only be one of these relatives in the home. Does that make any difference? Should that make any difference in our evaluation? It should not make any difference. I think he will have one to three, depending on whether he gets resentenced. But ultimately, that's one of the purposes of the individualized review, is for the District Court to examine, well, how old are these people going to be? How important is this relationship? What's the nature of the relationship? That's one factor that should have been considered below in imposing this condition. Since we live in a society today where an increasing number of people can't afford housing, and there are often multiple family groups that live in the same area, do we need to expand our definition of the appropriate liberty interest to include basically any familial relationship, regardless of how attenuated, so long as they live in the same, certainly the same abode, perhaps in the same neighborhood? I think that is what Moore teaches, that the Court should examine nontraditional families living together. Of course, for the purposes of this case, the Court does not have to go that far. Unless the Court has other questions about the no-contact condition, I have a lot of issues, and I'll move on to the Internet condition in this case, where really the problem with the condition imposed is the ubiquity of devices that communicate data or devices that communicate over the Internet. That renders this condition vague, overly broad, and a violation of Mr. Payne's First Amendment, because this condition reaches virtually any device that he could touch once he's out of prison. So many things communicate data via a dedicated connection that really his probation officer will have unfettered discretion to find him in violation of this condition. That renders it unconstitutionally vague. In addition, it's overly broad because of the same concerns. How would we draft it? Well, the government proposes some narrowing constructions, first asking the Court to impose only on devices that access the Internet, and then only devices that are capable of communicating narrowly, which does eliminate a lot of devices. But still, even then, it would be unconstitutionally vague and overly broad, because it prohibits his use of those devices. And so it would still reach Mr. Payne viewing an Internet-connected television at an airport. So how to construe it? I think you have to— At using? Well, I think, at a minimum, reasonable minds would disagree. I think how you use a TV is you watch a TV. And so my concern there is that he would be violated for using a device that is Internet-connected. If we agree with you, in part, that the condition imposed could have narrowing language, does that require resentencing? Or can the Court—in other words, does it require bringing Mr. Payne back out of custody? Or can the Court fix the condition upon remand? I don't think the language bears the narrowing construction that the government would like. If the Court is inclined to more narrowly construe it, I think this Court could do it. But with all of the issues in this case, I think remand is an appropriate remedy for the district court to adopt a different version of the condition. Right. No, I understand that. What you've asked for is resentencing. So I'm assuming that you would like an open remand and to have the defendant brought out and have a full resentencing hearing, right? That's correct. So if we say, well, the government has conceded that there are issues, like, for example, the family responsibility standard condition that the Court can basically, on remand, strike, and when the Court does that, perhaps it can rephrase some of these other conditions in the statute. Does that require a full resentencing hearing? This Court has narrowly construed conditions without a full resentencing. I think that what then militates in favor of resentencing here is the actual sentence imposed and our challenge to the custodial sentence itself. And I'll move on to that issue unless the Court has other... Your first issue. Exactly. If the Court's inclined to consider remand for a supervised release condition, I do think it's appropriate for the District Court to have an opportunity to better explain why they thought this sentence was appropriate, because as the record stands, it's clear the District Court violated Mr. Payne's due process rights by doing one of two things. Either the District Court weighed all of Mr. Payne's visits to Chat Step against him by drawing some negative inference about what was going on during his visits. That inference would have been undisputedly false, and so that would have violated due process. Or the District Court knew that some of Mr. Payne's visits to Chat Step were totally unrelated to child pornography or his fantasies about children, but weighed them against him anyways, and that would also violate due process. Ultimately, the Court clearly weighed Mr. Payne's visits to Chat Step against him in deciding that an 80-month sentence was appropriate rather than less. The Court expressly said it weighed them against him and his lack of criminal history and other equities. So ultimately, given the issues with supervised release conditions and the sentence, I think remand for open resentencing is appropriate in this case. Do you want to save any of your time, counsel, for rebuttal? I do, Your Honor. I'll briefly comment on the loitering condition, where the government – there are two parts of this condition that render it vague, both the verb loiter and that it's primarily – yes, he can't visit places primarily frequented by minors. The government doesn't respond to this Court's precedent or the Supreme Court precedent saying that criminalization of loitering is unconstitutional. Unless the Court has questions about that condition specifically for now, I'll reserve the remainder of my time for rebuttal. May it please the Court, Daniel Zipp on behalf of the United States. I'll start with the restriction on contact with children. The Court's restriction in this case provided two ways for this defendant to have contact with his nieces and nephews. First, without a father at all, he could have contact with his nieces and nephews simply by having an adult present who was aware of his conviction. In this case, that would include his brother who was already at his sentencing, and it would include, by the time he got out of custody, the adult children of his brother as long as he informed them of his conviction. Counsel, I guess what I'm troubled with is that while that may solve some of the problem, what if the brother needs to work, for example, and he wants the defendant to be a babysitter? I understand the government's position is that since he is convicted of the offense that he's convicted of, that maybe he ought not to be doing that. But in this case, as I understand it, there was never any physical contact with any human being. This was all Internet-based. Is that correct? That's correct, Your Honor. So under the circumstances, what is the nexus, if you will? What's the basis for requiring that another adult be present as opposed to just consenting under the circumstances? Because there's just such a fear that he's going to act upon his fantasies? Is that the concern? Largely, Your Honor. I think if you look in this case, he has no hands-on contact with children, but he did admit to having sexual fantasies about children. He posed as other people and chatted about sexual fantasies with children multiple times per week on the Internet. In his psychological report, it said that he was engaged in increasingly boundary-pushing sexual exploits to reach some level of novelty that equated to arousal, that he had a need for aberrant sexual experiences, that he tended to romanticize the experience of the child victims in his videos. So there's a lot in the record that would suggest that even if this defendant hasn't had an actual molestation to this point, there's a lot of risk factors that would weigh against allowing him to have unsupervised babysitting opportunities even with his nieces and nephews. And that also goes to the second... He's alleged to have a, in quotes, normal relationship with his nieces and nephews. Is that correct? Yes, Your Honor. And it's our position that whatever that broader liberty interest might be with nieces and nephews, in this case, given the sort of narrowing aspects of this condition that allows him that access to his nieces and nephews, as long as there's an adult present, or even if he wants to babysit, it also allows him to go to the probation officer and get permission to essentially babysit his nephews if he wants to. So there's sort of two levels of protection here that is far different from what this court rejected in Wolfchild, which was essentially a complete ban on contact with one's own children for 10 years. And the discretion to permit it rests in the probation officer rather than somebody else. And your position is that that's not an abuse of the court's discretion? No, not once you have the option one of having an adult present that sort of as a backup, allowing the probation officer to step in. This court has held in the past that that probation officer holds an important role in this process as an arm of the court and can certainly impose reasonable restrictions. So for all those reasons, it's our position that this particularly narrow restriction in this case does not implicate the same significant liberty interest that would have required further explanation on the part of the court. As to the internet condition, this is simply not as written a condition that would cause a person of average intelligence to have to simply guess at what the meaning was. The court in this case, the probation office proposed the condition. The defense filed a written objection sort of arguing that it was not clear which devices might be covered. And at the very outset of the hearing, the district court clarified and said that it was going to reframe the condition to reflect that he's prohibited from possessing devices that connect to the internet unless you have prior approval of your probation officer, that the device is one that can be monitored by the probation officer. Well, let's just say he goes to the grocery store. That's all connected to the internet. You buy something, you have a credit card, the metadata people within seconds know exactly what you've done. You buy something on Amazon, same kind of thing. Essentially what this says is that without the consent of the probation officer, he really can't live in the modern world. Is that a fair statement? No, it's not, Your Honor. I think, first of all, this court has imposed a mens rea requirement on all supervised release conditions. So the idea that he would somehow inadvertently violate this by using an ATM or a ticket machine is necessarily ruled out by the mens rea. But if he does do that, he's violated it, right? No, Your Honor. I think you have to view these with a certain amount of common sense and view them in the context, as this court said in Quinzon, in the context of what the conviction was here. This defendant was convicted of downloading child pornography from the internet, and the court's statement at the outset of the hearing makes it clear that this condition is meant to target that behavior, and it's meant to prohibit devices that are at least capable of accessing the internet in a way that could download child pornography. So the emphasis here is on the accessing, right? Is that what you're saying? Yes. It says you're prohibited from possessing devices that can access the internet unless you have prior approval that it can be monitored by the probation officer. In this context, the idea of a device that can be monitored by the probation officer, a person of common intelligence wouldn't have to guess what type of devices that is referring to. Right. I think the problem, though, is that the language as phrased is access to the internet, and there are, in today's world, a lot of devices that could access the internet, perhaps without the capability to download child pornography, which is the qualification that you put in in your argument, but that's not explicitly stated in the condition itself. It's not, Your Honor, but I think if you look at what the court explained on the record at the outset of the hearing, it specifically tied that access to the internet aspect of the restriction to the monitoring of the device. Right. Does that require some modification in the language of the condition, or do we just rely on kind of the rule of reasonableness and pull the sentencing transcript to explain what the court meant if he's brought up on a probation violation? No. I don't believe that it requires modification. I mean, certainly the condition as written, we could all rewrite in ways that would make it more clear exactly what the court was doing, but the test for this court is not whether it could rewrite it in a way that was perfect or more accurate. The test is whether, as written in the context of this case and in the context of the court's other statements, whether a person of reasonable intelligence viewing that would have to simply guess at what type of device this was. Well, let's take that as the standard. I go to Ralph's, say I'm the defendant, and I go to Ralph's, and I want to use this self-checkout stand. I know that's connected to the internet, but my probation officer can't monitor it. Does that mean knowing that it's connected to the internet that I'm guilty of a probation violation? No, Your Honor. Why wouldn't it be? It's connected to the internet. Does the condition talk about a device? It does. It talks about a device that could be monitored by the probation officer with respect to software monitoring equipment. So he can't go to the grocery store and use the self-checkout stand. Your Honor, I would submit you can take language like this in this condition and read it in sort of absurd ways that are divorced from the... Why is that absurd? He wants to get groceries. Everybody needs to eat, so what's the matter with that? That's not a device, is it? This is a device, isn't it? I'm trying to figure out... A credit card, is a credit card a device that you use that can access the internet? I wouldn't think so, but again, once you sort of go down the hole of words having no discernible meaning and this sort of hypothetical... What the rule of reasonableness read into these conditions. Yes, and I think that's what this Court has held in Quinzon and Phillips, is that you have to view this with a sort of common sense and in the context of what the actual crime of conviction was here. And no reasonable person is going to be confused into thinking that after a child porn conviction that the Court was concerned about buying groceries using... So are you saying that when and if the defendant goes to Ralph's, uses the checkout stand, that the government's position is that he's not violated the condition because even though the probation officer has not monitored it, just common sense tells you that's not what the Court had in mind? Yes, Your Honor, that's fair. And I would also add that this Court has held in Phillips that there is, in this specific context of vagueness challenges, there's a built-in sort of second layer of review in that eight years down the road or whenever this defendant is actually out of custody, these sort of hypothetical vagueness challenges are only going to come up once and if the defendant is actually violated, if the probation officer finds that to be a violation, and if the Court signs off on arresting this defendant for buying groceries. And that second level of review eliminates the need to... Your time is up. Let me ask my colleague whether either has any additional questions. Do you want to briefly address the number of chat rooms? The Court did specifically reference the number as being an aggravating factor in the sentence. Was there an impermissible inference reached? There was not, Your Honor. I think if you look at the totality of the record, what... Even the defense counsel stood up and said, this is so obvious that it doesn't need to be stated that some percentage of these 1,500 visits were not related to child pornography. From that, the Court went on and because it was so obvious, didn't actually state that there was some percentage less than 1,500. It just used 1,500 as sort of a shorthand for the total number of visits. And ultimately, the number of visits over that eight-month period is not what was driving the Court's analysis of the nature and circumstances of this offense. What was driving the Court was the nature of the access itself. This defendant admitted in his post-arrest statement that he accessed the chat step program multiple times per week to chat about child pornography and to access child pornography. And it's that aspect, that idea that this defendant is interacting on a sort of one-on-one level with other people who are involved in this sort of activity that set his case apart from the more traditional sort of peer-to-peer, someone sitting in their room downloading from a line wire or some other access. This defendant was out there impersonating pregnant women, trading pictures on chat step and doing it extensively over the course of eight months. Whether that was 1,400 times or 1,500 times or even 100 times, it was the nature of what he was doing that separated his case from sort of the mine run of other child pornography cases. Other questions by my colleague? All right. Thank you, counsel, for your presentation. We'll hear the rebuttal from the defendant. Starting with the no-contact condition, as the Court's aware, this is really not the place for an individualized inquiry to happen. But by diving into the facts of Mr. Payne's evaluation during sentencing, the government essentially is litigating whether it was appropriate in individual relationships. But the district court should have been the first place for the judge to decide, do the burdens outweigh Mr. Payne's familial interests? And there's nothing in that evaluation showing any risk to family. That really is the core of Wolfchild's holding, that risk to family is different than risk to someone in the public. As far as the Internet condition is concerned, I think Your Honor really focused on something important, which is that this idea that we're focused on things that can access pornography really is something invented in the government's briefs. It's not something from the record. The district court said, did mention devices that access the Internet. That's one way to construe this. Devices that can access pornography is another. A smart speaker is connected to the Internet but can't access pornography. And there is, obviously from this hearing, I think, an enormous risk of uncertainty about what is a device, what is connected to the Internet. The mens rea requirement for Mr. Payne is only that he know what he's using is connected to the Internet. And presumably if he's checking out at a cash register, he may actually know that it's connected to the Internet and therefore a violation. The government ultimately doesn't respond to things that are not, that are far from true. A smart speaker or a home appliance that has a screen that is Internet connected, all would place him at risk of incarceration, even though they have no bearing at all in relation to his offense. As far as the sentence, the ultimate sentence was concerned, the district court expressly said that it was weighing Mr. Payne's chat set visits against him. And even though the court didn't know what percentage were good or bad, the court decided to weigh them against him. And in light of that, I think remand for resentencing is appropriate. Thank you, counsel. Thanks to both counsel for your argument. The case just argued is submitted.
judges: Schroeder, M. Smith, Nguyen